## The Union Bank of Louisiana *v.* Erwin.

Where the legal mortgage existing in favor of a minor on the property of his tutor has been released by a decree of court, on the substitution of a special mortgage in his favor, in conformity with the provisions of the stat. of 11 March, 1830, the court cannot afterwards, on the depreciation of the property specially mortgaged, set aside its own final decree, and reinstate the legal mortgage.

APPEAL from the Fifth District Court of New Orleans, *Buchanan,* J. *Denis,* for the plaintiffs. *Mott,* for the under-tutor, appellant. *Josephs, T. A. Clarke, Durant,* and *Fraser,* for different appellees. The judgment of the court was pronounced by

ROST, J.* The plaintiffs caused certain property mortgaged to them by the defendant to be sold. The amount of the adjudication exceeded their claims by about $22,500, and *Isaac Osgood,* the purchaser, instituted these proceedings for the purposes of ascertaining to which of the subsequent mortgagees this balance should be paid, and of obtaining the release of the unsatisfied mortgages, so far as they affect the property. This appeal is taken on behalf of the minor children of the defendant, whose claim to receive the surplus of the adjudication was disallowed in the first instance.

---

* EUSTIS, C. J., being interested, did not sit in this case.

UNION BANK
*v.*
ERWIN.

It appears that *James Erwin* was originally the tutor of his children, and that they had a legal mortgage on all his property for their rights in the succession of their mother; but, in 1837, the defendant gave them a special mortgage on unencumbered property, and the legal mortgage was released by a decree of court, in conformity with the provisions of the act approved on the 11th March, 1830. In 1842, the under-tutor of the minors presented a petition to the Court of Probates, alleging that the property specially mortgaged had greatly depreciated in value, and was insufficient to secure their claims. The prayer of the petition was that *James Erwin* be cited to furnish additional security, and that, in default thereof, the general mortgage be reinstated, be recorded in the books of the recorder of mortgages, and be declared binding on all property then owned, or thereafter to be acquired by him. *James Erwin* admitted, in his answer, the depreciation of the property, and that it might not be adequate to the protection of the interests of his children, but expressly refused to give an additional mortgage.

The judgment of the court on that issue was: "That the decree of this court, rendered on the 12th of April, 1837, be rescinded and annulled, so far as it directs the cancelling and annulling of the general mortgage existing in favor of the minors. That the general and tacit mortgage, which by law exists in favor of minors, be reinstated in their favor, against their father *James Erwin*; that a copy of this judgment be recorded in the office of the recorder of mortgages of this parish, and in such other parishes as the under-tutor may deem necessary for securing the rights of the minors." This judgment was not recorded till the 12th of December, 1846, and is subsequent in the date of its registry to the mortgages of all the other opposing creditors. Supposing the mortgage to be valid, the court below correctly determined that it was inoperative, as to third persons, until it was recorded. But, with the most anxious desire to save the minors harmless, we cannot recognise its validity. Art. 548 of the Code of Practice provides that, a judgment when once rendered becomes the property of him in whose favor it has been given, and the judge cannot alter the same except in the mode provided by law. The various modes provided by law in relation to final decrees are found in the chapter of the Code of Practice, treating of the nullity of judgments, and this case comes within none of them. Legal mortgages exist by the operation of law. The law provides how the property of tutors may in certain cases be discharged from those operating in favor of their wards, but, after the discharge has taken place, it nowhere authorises courts of justice to revive them. The Court of Probates was without power to revive the mortgage, or to set aside its own final decree, five years after its rendition; and the judgment by which this was attempted to be done must be considered as an absolute nullity.

Should the minors sustain any damage from the view we have taken of their rights, the fault will rest exclusively with their father. It was his duty to have given a conventional mortgage on this or other property, when called upon to do so. But he refused, preferring that a general mortgage should be reinstated on all his property. The minors remain with their conventional mortgage, and have no capacity to contest the distribution of the fund claimed by them.

*Judgment affirmed.*